## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 30 2016, 9:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Deidre L. Monroe
Public Defender's Office
Gary, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General

James D. Boyer
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

In the Termination of the Parent-Child Relationship of: J.S., Minor Child,

M.S.,

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner.*

June 30, 2016

Court of Appeals Case No. 45A03-1601-JT-63

Appeal from the Lake Superior Court

The Honorable Thomas P. Stefaniak, Jr., Judge

Trial Court Cause No. 45D06-1503-JT-48

**Najam, Judge.**

## Statement of the Case

M.S. ("Father") appeals the trial court's termination of his parental rights over his minor child, J.S. ("Child"). Father raises one issue for our review, which we restate as whether the trial court's termination of Father's parental rights to Child was clearly erroneous.

We affirm.

## Facts and Procedural History

Child was born to Father and J.M. ("Mother")[1], who were not married, on May 28, 2010. On May 29, Father established his paternity of Child by affidavit, but Father did not live with Mother and Child.

On July 28, 2013, officers with the Lake Station Police Department were dispatched to Mother's home in Hobart following a report that Mother had overdosed on Valium pills with Child in the home. Upon arriving at Mother's home, the police found Mother unresponsive and Child watching television. Mother was taken to the hospital, and the police contacted the Indiana Department of Child Services ("DCS") regarding Child. Child was placed in the care of her maternal grandmother.

---

[1] Mother voluntarily terminated her parental rights and does not participate in this appeal.

[5] On July 30, DCS filed its petition alleging Child was a child in need of services ("CHINS"). On August 30, following a fact-finding hearing, the trial court adjudicated Child to be a CHINS. Both Mother and Father were ordered to participate in reunification services, including a drug/alcohol evaluation and any recommended treatment, random drug screens, and supervised visitation. The trial court ordered that Child be placed with her paternal great-grandparents.

[6] Father did not engage in any of the services ordered by the trial court. He did not visit Child, and he did not obtained a drug/alcohol evaluation. Father was imprisoned from September 2013 to February 2014 for theft, and from June 2014 to October 2014 for theft of a firearm and a probation violation. Because Father had failed to engage in any of the services offered by DCS, the service providers closed their services to him in October 2014.

[7] In November 2014, the trial court granted Father's grandmother's request that the services to Father be reopened. However, Father again failed to complete any of the required services, and the services were once more closed to him for non-compliance. Three months later, DCS reopened services to Father for a second time, but Father again failed to participate in any of the services, even when he was not incarcerated. Father did participate in a "substance anger management type class" while he was incarcerated in Lake County Jail in 2014, but he "did not find it helpful" and relapsed into drug use when he was subsequently released from incarceration. Tr. at 54-55.

[8]     On March 12, 2015, DCS filed its petition to terminate Mother's and Father's parental rights as to Child.  In June, Father was again incarcerated, this time for Level 5 burglary, for which he could be sentenced to one to three years imprisonment.  On September 30, the trial court held a permanency hearing and changed the permanency plan from reunification to termination of parental rights and adoption by Child's maternal grandmother.  On December 9, the trial court held an evidentiary hearing on the termination petition.  At the hearing, Antoinette Crosslin, the DCS family case manager ("FCM"), testified that termination of parental rights is in Child's best interest because of Father's "long term history of being incarcerated for different offenses and substance abuse." *Id.* at 94.  FCM Crosslin also testified that Child's adoption by her maternal grandmother is best for Child because the maternal grandmother also had care of Child's younger sibling with whom Child had bonded.

[9]     On December 16, the trial court entered the following relevant findings and conclusions in support of terminating Father's parental rights:

> The child(ren) has been removed from her parent(s) for least six (6) months under a dispositional decree(s) of this Court dated August 30, 2013[,] as to the father and on December 9, 2013[.] as to the [m]other[,] retroactive to July 28, 2013. . . .
>
> The child(ren) has been removed from the parent and has been under the supervision of the Indiana Department of Child Services for at least fifteen (15) of the most recent twenty-two (22) months.

There is a reasonable probability that the conditions resulting in the removal of the child(ren) from her parents' home will not be remedied in that: The child was removed from parental care in July of 2013 when mother overdosed in the home with the child present. The child was removed from mother's care and placed in relative placement. The investigation revealed that the child lived with the grandmother most of her life and was only sporadically in the care of the parents.

Services were offered to the parents pursuant to a case plan which included initial clinical assessments, random drug screens, substance abuse evaluations, individual therapy, inpatient and outpatient substance abuse programs and supervised visitations.

Mother has voluntarily relinquished her parental rights in open court.

Father, [M.S.] is the legal father of this child. (Exhibit A)

Father did not participate in any services. Father did not complete the substance abuse evaluation. Father did not submit to any drug screens. Father did not participate in any inpatient or outpatient substance abuse programs. Father did not participate in any supervised visitations with the child. Father did not complete one single aspect of the case plan. Father has been totally non-compliant with the case plan. Father has made absolutely no effort to work towards reunification with his child. Services for the father were closed in October of 2014 due to father's non-compliance. In November of 2014, the relatives appeared at a CHINS review hearing requesting services for father to be reinstated. Services were reinstated and father again was totally non-compliant. Father did not even start any of the services, much less complete any of them. Services were again suspended after three months of non-compliance. At another CHINS review hearing, services were again reinstated for the

father for the third [sic] time and father again was non-compliant and did not even begin any of the services. All efforts made to provide services to the father have failed due to father's lack of participation.

Father has a lengthy criminal history and is currently incarcerated since June of 2015 and has been throughout the majority of this case. Father testified that he is currently incarcerated for burglary and is scheduled to be sentenced in a few days which he is facing a one to three year sentence.

Father testified that he was incarcerated from September 2013 through February of 2014 for fraud and forgery and again incarcerated from June of 2014 through October of 2014 for Theft. Father indicated that he has been in and out of jail for numerous years stemming back from 2009 and also violations of his probation. Father's criminal history is lengthy and continues to this date. Father's pattern of conduct has not improved.

Father testified that he has substance abuse issues and has been struggling with a heroin addiction since the year 2013. Father further testified that he remains clean while incarcerated, but whenever he is released from incarceration, his [sic] continues with his addiction. Father did not participate in any substance abuse treatments for his addiction during this case. Father clearly has not addressed his substance abuse issues. Father testified that he cannot maintain sobriety out of incarceration even though he completed a substance abuse case [sic] in the Lake County Jail during one of his incarcerations.

Father is not able to provide a safe and secure home for this child. Father does not have stable housing and plans on living with a relative when he is released from incarceration although Father has not formally asked any relative if he can live with them. Father is in no position to properly parent this child.

Father's history shows a long pattern of substance abuse issues and multiple burglary/theft charges. Father continues with his criminal and substance abuse patterns. Father continues with the instability in his life. Father, by his own admission, will likely be incarcerated further at this [sic] sentencing hearing later this week.

Father indicated that the child has been raised by his parents and grandparents for the past five years. Father indicated that he did not raise this child and wants the child placed with his relatives. Father testified that he is in no position to parent this child.

Neither parent is providing any emotional or financial support for the child. Neither parent has completed any case plan for reunification. Mother has voluntarily relinquished her parental rights and Father is in no position to properly parent this child. The child is in relative placement with her sibling and is bonded and thriving. The child has been in placement since July of 2013 and has never been returned to parental care or custody.

There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child(ren) in that: for the reasons stated above. Additionally, the child deserves a loving, caring, safe, stable and drug free home.

It is in the best interest of the child(ren) and her health, welfare and future that the parent-child relationship between the child(ren) and her parents be forever fully and absolutely terminated.

The Indiana Department of Child Services has a satisfactory plan for the care and treatment of the child(ren) which is Adoption by the grandmother, Ms. Cummings.

* * *

> The Court grants said petition, and it is adjudged that the parent-child relationship between [J.S.] - Ward of DCS, the child(ren), and [J.M.] (Mother) and [M.S.] (Father), the parent(s), and any unknown Father, be, and the same hereby is terminated, and all rights, powers, privileges, immunities, duties and obligations (including the right to consent to adoption) pertaining to that relationship are hereby permanently terminated. . . .

Appellant's App. at 1-4. This appeal ensued.

## Discussion and Decision

[10] Father maintains that the trial court's order terminating his parental rights was clearly erroneous. We begin our review of this issue by acknowledging that "[t]he traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *Bailey v. Tippecanoe Div. of Family & Children* (*In re M.B.*), 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. However, a trial court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding a termination. *Schultz v. Porter Cnty. Ofc. of Family & Children* (*In re K.S.*), 750 N.E.2d 832, 837 (Ind. Ct. App. 2001). Termination of a parent-child relationship is proper where a child's emotional and physical development is threatened. *Id.* Although the right to raise one's own child should not be terminated solely because there is a better home available for the child, parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id.* at 836.

[11] Before an involuntary termination of parental rights can occur in Indiana, DCS is required to allege and prove, among other things:

> (B) that one (1) of the following is true:
>
> (i)  There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>
> (ii)  There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>
> (iii)  The child has, on two (2) separate occasions, been adjudicated a child in need of services.
>
> * * *
>
> (C) [and] that termination is in the best interests of the child . . . .

Ind. Code § 31-35-2-4(b)(2) (2015).  DCS need establish only one of the requirements of subsection (b)(2)(B) before the trial court may terminate parental rights.  *Id*.  DCS's "burden of proof in termination of parental rights cases is one of 'clear and convincing evidence.'"  *R.Y. v. Ind. Dep't of Child Servs. (In re G.Y.)*, 904 N.E.2d 1257, 1260-61 (Ind. 2009) (quoting I.C. § 31-37-14-2).

[12] When reviewing a termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses.  *Peterson v. Marion Cnty. Ofc. of Family & Children (In re D.D.)*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans.*

*denied*. Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id*. Moreover, in deference to the trial court's unique position to assess the evidence, we will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous. *Judy S. v. Noble Cnty. Ofc. of Family & Children* (*In re L.S.*), 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

[13] Here, in terminating Father's parental rights, the trial court entered specific findings of fact and conclusions thereon. When a trial court's judgment contains special findings and conclusions, we apply a two-tiered standard of review. *Bester v. Lake Cnty. Ofc. of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). First, we determine whether the evidence supports the findings and, second, we determine whether the findings support the judgment. *Id*. "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the trial court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

[14] Father contends that the trial court erred in concluding that he will not remedy the conditions that resulted in Child's removal; that the continuation of the parent-child relationships poses a threat to the well-being of Child; that termination is in the best interest of Child; and that the permanency plan was satisfactory. Because Indiana Code Section 31-35-2-4(b)(2)(B) is written in the disjunctive, we address only whether the trial court erred in concluding that continuation of the parent-child relationships poses a threat to Child and that

termination is in Child's best interests. We also briefly address Father's "satisfactory plan" contention.

*Continuation of the Parent-Child Relationship*

Father contends that the trial court's conclusion that continuation of the parent-child relationship would pose a threat to Child is not supported by the evidence. However, Father's arguments are simply requests that we reweigh the evidence, which we cannot do. *In re D.D.*, 804 N.E.2d at 265. Instead, we must determine whether the evidence most favorable to the judgment supports the trial court's conclusion. *Id.*; *Quillen*, 671 N.E.2d at 102. We hold that it does.

The trial court's conclusion is supported by the evidence. FCM Crosslin testified that termination of parental rights is in Child's best interest because of Father's "long term history of being incarcerated for different offenses and substance abuse." Tr. at 94. This testimony is supported by the uncontested fact that Father has a lengthy criminal history, starting in 2009 and continuing to the date of the termination hearing. In fact, Father was incarcerated at the time of the hearing and had not yet been sentenced. Father testified that, because of that, he was unable to care for Child at the time of the hearing and would not be able to do so within the next one to three years, depending on the length of his sentence for his most recent crime. Father also admitted that he has a drug abuse problem and relapses into drug abuse every time he is released

from incarceration.[2] Moreover, Father has not been employed since 2013, and he does not have a home in which to care for Child. Father testified that he planned to live with his mother when he was released from jail, but he had not yet discussed that with his mother.

[17] All of this evidence clearly supports the trial court's conclusion that continuation of the parent-child relationship would pose a threat to Child. The trial court must consider the parent's ability to care for the child at the time of the termination hearing, taking into consideration evidence of changed conditions. *In re M.S.*, 898 N.E.2d 307, 311 (Ind. Ct. App. 2008). To predict future behavior of a parent, the trial court should look at the parent's habitual patterns of conduct, and it "need not wait until a child is irreversibly influenced by a deficient lifestyle such that his physical, mental, and social growth is permanently impaired before terminating the parent-child relationship." *Id*. Father clearly has a habitual pattern of criminal activity, incarceration, and substance abuse, and there is no evidence that those conditions are likely to change. Moreover, Father had not been Child's caretaker in the past, and there was no evidence, other than his own speculation, that he would be in a position to care for Child in the future. When the evidence shows that the emotional

---

[2] The trial court's finding that Father did not engage in any substance abuse treatment during this case is not erroneous, as Father contends. Father points to his participation in a "substance anger management type class" while he was incarcerated in Lake County Jail in 2014, but there was no evidence that the class actually provided treatment. Tr. at 54. Moreover, Father admitted that he "did not find [the class] helpful" and relapsed into drug use when he was subsequently released from prison. *Id*. at 55.

and physical development of a child in need of services is threatened, as it does here, termination of the parent-child relationship is appropriate. *Id.*

### Best Interests

[18]  In determining whether termination of parental rights is in the best interests of a child, the trial court is required to look at the totality of the evidence. *A.S. v. Ind. Dep't of Child Servs.* (*In re A.K.*), 924 N.E.2d 212, 224 (Ind. Ct. App. 2010). "A parent's historical inability to provide adequate housing, stability and supervision coupled with a current inability to provide the same will support a finding that termination of the parent-child relationship is in the child's best interests." *Castro v. State Ofc. of Family & Children*, 842 N.E.2d 367, 374 (Ind. Ct. App. 2006), *trans. denied*. "Additionally, a child's need for permanency is an important consideration in determining the best interests of a child, and the testimony of the service providers may support a finding that termination is in the child's best interests." *In re A.K.*, 924 N.E.2d at 224. Such evidence, in addition to evidence that continuation of the parent-child relationship poses a threat to the children, is sufficient to show by clear and convincing evidence that termination is in the child's best interests. *L.S. v. Ind. Dep't of Child Servs.* (*In re A.D.S.*), 987 N.E.2d 1150, 1158-59 (Ind. Ct. App. 2013), *trans. denied*.

[19]  Here, the evidence cited above also supports the trial court's conclusion that termination of Father's parental rights is in Child's best interest. Father's history of criminal activity, incarceration, and drug abuse made him unable to provide stable, safe care for Child in the past, and there is no evidence to support his speculation that he will be able to do so at some unknown point in

the future. Based on Father's criminal and drug abuse history, FCM Crosslin testified that termination of parental rights is in Child's best interest. Moreover, Father provides no evidentiary support for his contentions that Child will be harmed by the termination of Father's parental rights. Given the evidence that Child needs stability, supervision, and care that Father cannot provide, we hold that the totality of the evidence supports the trial court's conclusion that termination is in Child's best interests.

### Satisfactory Plan for Child

[20] Father claims, without citation to the record, that "[t]estimony at trial indicated" that maternal grandmother had not fully bonded with Child. Appellant's Br. at 9. However, a satisfactory plan for the care and treatment of the children "need not be detailed, so long as it offers a general sense of the direction in which the child will be going after the parent-child relationship is terminated." *In re D.D.*, 804 N.E.2d at 268 (citing *Jones v. Gibson Cnty. Div. of Family and Children (In re B.D.J.)*, 728 N.E.2d 195, 204 (Ind. Ct. App. 2000)). Further, DCS need not have a plan that contemplates a specific adopting family at all; it need only show that the plan is adoption. *Lang v. Stark Cnty. Ofc. of Family and Children*, 861 N.E.2d 366, 375 (Ind. Ct. App. 2007) ("[a]ttempting to find suitable parents to adopt the children is clearly a satisfactory plan"), *trans. denied*. In this case, the plan was for Child's adoption by maternal grandmother, and the FCM testified that she believed this was the "best fit" for Child. Tr. at 91-92. Thus, the evidence supports the trial court's conclusion that adoption is a satisfactory plan, and that conclusion is not clearly erroneous.

The trial court did not err when it terminated Father's parental rights to Child.

Affirmed.

Robb, J., and Crone, J., concur.